## DODGE v. F. A. D. ANDREA, Inc.

(District Court, E. D. Pennsylvania. January 27, 1926.)

### No. 11456.

Sales ⬤120, 182(1)—Failure of number of units to conform to sample did not warrant rescission; whether proportion of defective goods warranted rescission held for jury.

Under Pennsylvania Sales Act, § 16 (Pa. St. 1920, § 19664), as to implied warranty that bulk will conform to sample, in action by seller by sample of 20,000 radio cabinets, after rescission by buyer, where it was shown that lacquer finish on 407 of 11,000 cabinets delivered was defective and turned white, *held* failure of that number of cabinets to conform to sample did not warrant rescission, unless it constituted a material breach, and, whether the number of defective cabinets among those delivered was sufficiently large to warrant rescission was for the jury.

At Law. Action by Kern Dodge, receiver, against F. A. D. Andrea, Inc. On defendant's motion for a new trial after verdict for plaintiff. Motion denied.

Wayne P. Rambo and Robert T. McCracken, both of Philadelphia, Pa., for plaintiff.

Allen S. Olmstead, II, Saul, Ewing, Remick & Saul, and Maurice Bower Saul, all of Philadelphia, Pa., for defendant.

Before THOMPSON and DICKINSON, District Judges.

THOMPSON, District Judge. Under the contracts in suit, the plaintiff agreed to manufacture for the defendant some 20,000 cabinets for radio sets. The contracts consisted of proposals and acceptances, which were followed by purchase orders accepted by the plaintiff, each containing in substance the following provision: "These cabinets to have best quality lacquer finish equal to our sample. The color must be identical with our sample."

Upon some of the cabinets white spots developed upon the lacquer finish after delivery. After about 11,500 cabinets had been delivered, the defendant notified the plaintiff: "We have concluded to cancel the order and in future will accept no further cabinets from you."

The letter set out as the grounds upon which the right to cancel was asserted the inferior quality of the cabinets manufactured, and the receipt of complaints from customers, but no specific ground of inferiority or complaint was stated. The sole de-

fense set up to establish the defendant's right to cancel was the fact that the lacquer finish on many of the cabinets turned white. In accordance with the terms of the contract, the defendant had an inspector at the plaintiff's plant during the entire period of manufacture. At the trial, therefore, one of the issues was the responsibility of the plaintiff for latent defects in the lacquer finish which could not have been discovered upon inspection. Prior to the attempted cancellation 407 cabinets had been returned by the defendant to the plaintiff in accordance with a condition of the contract, which reads: "Any defective material will be returned for credit, and transportation costs both ways charged to you."

The plaintiff claimed as part of his damages an item of $2,587.63 for the expense of refinishing the cabinets returned. That sum was included as a separate item in a statement prepared by the attorney for the plaintiff, which was, without objection, handed to the jury as a calculation of damages claimed, totalling $70,415.06. The jury returned a verdict in favor of the plaintiff for $67,-827.43, which was $2,587.63 (the exact amount of the item for repairing and refinishing the cabinets) less than the amount claimed in the statement of the plaintiff's damages.

The defendant had offered testimony to show that about 3,500 cabinets were defective in the lacquer finish. It is apparent, therefore, that the jury found that the total number of cabinets defective in finish through the fault of the plaintiff included only the 407 cabinets returned, and that they did not find as a fact, based on the defendant's testimony, the defective condition of some 3,500 cabinets nor the plaintiff's responsibility therefor.

The defendant now moves for a new trial upon the ground that the trial judge erred in his instruction to the jury bearing upon the effect of section 16 of the Pennsylvania Sales Act (P. L. 1915, p. 547, Pa. St. 1920, § 19664). The applicable part of that section is as follows:

"In a case of a contract to sell or a sale by sample:

"(a) There is an implied warranty that the bulk shall correspond with the sample in quality."

The contention of the defendant is that, inasmuch as in sales of grain, coal, or other merchandise sold in bulk, the bulk consists of the entire quantity of the article, either in esse, after taking out the sample, or to be supplied, the same rule should apply in an executory contract to manufacture and sell, and that, therefore, each unit manufactured and delivered must conform to the sample or model of the article to be manufactured, and that the failure of any number of the units to correspond with that requirement gives the right to the buyer to rescind.

We are of the opinion that the rule applying to breach of warranty does not admit of the narrow construction for which the defendant contends. While under the contracts the cabinets were to be delivered and paid for in installments as manufactured, there was no evidence at the trial to show which of the cabinets defective in lacquer finish were part of any particular installment so that the jury could not have found the materiality of the breach under section 45 of the Pennsylvania Sales Act (Pa. St. 1920, § 19693) as to any one or more installment delivered.

As Mr. Justice Simpson said in Monroe v. Diamond, 279 Pa. 310, 123 A. 817:

"Obviously the question as to whether or not defendant was materially injured by plaintiff's breach, 'depends * * * (not only) on the terms of the contract, * * * (but also on) the circumstances of the case,' and this must be so in every broken contract of sale. Hence, the law, which seeks to remedy the wrong actually done, now wisely conditions the relief on the materiality of the breach, as thus determined, and not merely on the form of the contract."

The question for the jury, therefore, was whether there was a sufficient number of defective cabinets out of the whole number delivered up to the time of the attempted cancellation to constitute a material failure of the bulk of the cabinets delivered to correspond with the sample. The determination of what constituted the bulk of the large number delivered was a jury question.

The definition of "bulk" in Webster and the Century Dictionaries is: "The main mass or body; the largest or principal portion; the majority, as the bulk of a debt."

The jury were not instructed, however, that the right to cancel was dependent upon the question whether the largest or principal portion or majority of the cabinets was defective, but the thought followed by the trial judge, in view of the circumstances of the case and the agreement that defective materials should be returned for credit, was in accordance with the theory of the defendant as expressed in its first point for charge, which was affirmed, and is as follows: "If the jury believe that the plaintiff represented

itself to be a manufacturer qualified to produce lacquer finish cabinets and contracted to deliver cabinets with the best or highest grade lacquer finish, and if the jury further believe that the methods and processes of the plaintiff were such that the lacquer finish on the cabinets manufactured by it were likely to turn white and blemish in the manner shown in the defendant's exhibits, after the time of delivery to the defendant, and if the jury further believe that a large number of cabinets did so turn white from that cause and blemish as testified by the defendant's witnesses, then the defendant was justified in cancelling the contract."

The jury apparently found that 407 of the cabinets turned white from causes produced by the plaintiff's workmanship, and that the bulk of the cabinets manufactured and delivered, over 11,000, were manufactured in conformity with the sample. The jury, no doubt, would have returned a different verdict if they had found from the testimony that about 3,500 cabinets were defective through the plaintiff's fault. And the jury might have found, as they were at liberty to do, that 407 defective cabinets were a sufficiently large number to so affect the bulk that it did not correspond with the sample, but they did not so find. The issues were for the jury, and, the trial judge having charged in accordance with the defendant's request, we perceive no sufficient reason for reopening the case.

Motion denied.